DUFFY v. WILLIAMS et al.

(Supreme Court, Appellate Division, First Department. April 11, 1902.)

NEGLIGENCE—EMPLOYES—MASTER AND SERVANT—OPERATION OF MACHINERY—
EVIDENCE.

Plaintiff was employed by contractors for marble work in an 11-story
building. A hod hoister erected by another contractor was used in
hoisting materials, of which plaintiff's employers rented the use, but
it was managed by an engineer of its owner. Plaintiff, by direction of
his foreman, assisted in loading the hoister, and testified that the fore-
man directed him to go up with the material and leave it on the eleventh
floor; that he asked the engineer to take him to the eleventh floor, and
he said, "Yes," and that the foreman said, "Yes; we will give you the

eleventh floor." The engineer failed to stop the hoister at the floor, but sent it rapidly to the top of the shaft, injuring plaintiff. There was no defect in the machinery, which had all appliances except an unusual automatic stop. *Held*, that neither the owner of the building nor plaintiff's employers were liable for the accident, being responsible neither for the engineer's negligence, nor the construction of the hoister.

Hatch, J., dissenting.

Appeal from trial term, New York county.

Action by James Duffy against John T. Williams and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Gilbert D. Lamb, for appellant.

Carl S. Petrasch, for respondents.

INGRAHAM, J. The plaintiff was employed as a marble cutter's helper by the defendants Shipway, who were importers and manufacturers of interior marble work, and were engaged in the construction of a building owned by the defendant Williams on the corner of Broadway and White street, in the city of New York. He was sent to this building, and directed to report to one McNulty, who was in the employ of the defendants Shipway as a marble cutter, charged with the direction of their workmen at the building in the absence of the foreman. The building, which was 11 stories high, was in course of construction; and the plaintiff was engaged in removing marble from a truck on the sidewalk, and carrying it into the building, and to the different floors where it was to be used. There was a hod hoister, which was used to take this material to the different floors. The plaintiff testified that, under the direction of McNulty, he put two barrels of plaster on this hod hoister, and that McNulty directed him to go up with the material and leave it on the eleventh floor; that he asked the engineer who was in charge of this hoister to take him up to the eleventh floor, to which the engineer said, "Yes," and McNulty said, "Yes; we will give you the eleventh floor;" that the hod hoister went up with the plaintiff on it, and when it got to the ninth floor it increased in speed, and, instead of stopping at the eleventh floor, it went to the top of the building,—the plaintiff's head striking on the wheel at the top over which the wire rope which elevated the hoister revolved, and seriously injuring the plaintiff. When he came to himself, he was lying on the roof of the building, and was subsequently found by McNulty, and was taken down to the street, and sent in an ambulance to the hospital. This hod hoister consisted of a platform, with a cross rail about four or five feet from the floor of the hoister. The plaintiff had been engaged in work of this character for six years before the accident. He had worked on many jobs similar to the one in question and had ridden on hod hoisters a great many times. He had been working in this building for six or seven days before the accident, unloading marble from the trucks and placing it alongside the shaft, and then helping to take it upstairs on a hod hoister similar to the one in question, except that it was larger. There was a rope running up and down the shaft, which connected with a bell in the

engine room, and was used to signal to the engineer; and the plaintiff, knew what the rope was for, but had never used it. There were ladders leading from floor to floor of the building all the way to the top, which the defendant's men used at times for going about the building. For a portion of each day, McNulty, acting on behalf of the defendants, secured the use of this hod hoister, and used it to get materials up to the different floors of the building. The arrangement that was made between the Shipways and the superintendent of the building was that the Shipways were to have the use of the hod-hoister machinery when not in use by other contractors. The Shipways had no control over it, and had nothing to do with it, except to use it at certain times when they needed it to hoist materials used in the building, and when it was not in use by the other subcontractors; and for its use the defendants Shipway paid $10 per hour. It was erected by the Star Building Company, a contractor at work in the building, who ran it, employed the engineers who had charge of the engine, and paid them, and generally had control of the machine. Clay, the engineer in charge of this particular hoister at the time, had been employed by this company, and was under its control. The man that built this elevator testified that he built it about a month before October 2, 1896, and it was in daily use from the time it was finished until the accident; that this hoister was the usual one used in buildings of this character for this work; that it was well made, and proper for the work that it was required to do; that there was a bell rope at the side of the elevator, which could be used to signal the engineer to stop it. McNulty testified that on the day of the accident he obtained the use of this hoister from half past 5 to 6 o'clock; that he then started to send to the upper stories 10 or 12 barrels of plaster; that he put one barrel on the hoister, and Duffy put the other on, and then the witness said to Duffy, "Which will you do,—take them off or put them on?" to which Duffy replied, "I will take them off;" and he jumped on the barrel, with one foot on the elevator and the other foot on the barrel, and with one hand on the cable attached to the hoister to steady himself. They then told the engineer to take the barrels up to the eleventh floor.

To hold the defendants Shipway liable for this accident, it is necessary to bring home to them a neglect of a duty that they owed to the plaintiff. In the performance of this work they used, with the other subcontractors, a machine on the premises for hoisting their materials to the several floors. They were not responsible for the construction of this machine, nor were they responsible for the engineer who ran it. Assuming that McNulty told the plaintiff to go up on this hoister with the materials, the use of the hoister and the danger incident to its use were as apparent to the plaintiff as they were to McNulty. The machine was reasonably safe for the use for which it was intended. No accident happened because of any inherent defect in the machine itself. Nothing about the machine broke, and it was continued in use immediately after the accident; and, assuming that the plaintiff's testimony as to the accident is correct, the accident was caused by the neglect of the engineer to stop the machine at the eleventh floor. The plaintiff testified that he knew of the bell rope and its use, but did not use it; he having

told the engineer to stop him at the eleventh floor. This the engineer omitted to do, and it was in consequence of this neglect that the plaintiff was injured. If there was any negligence connected with this transaction, it was the negligence of the engineer, and it is apparent that the negligence of this engineer was not chargeable to the defendants. The engineer was not their servant. They neither employed him nor discharged him,—had no control over him, The machine had none of the safeguards in use upon passenger elevators, and its use by the workmen was necessarily attended with some risk; but the accident that happened was caused, not by any inherent defect in the hoister, not because it was improperly constructed, but because of the neglect of the engineer to follow the instructions of the plaintiff, and stop the machine at the eleventh floor. Upon no principle can the defendants be said to be responsible for his negligence. There was no inherent defect or improper method of construction that made this elevator dangerous. It was what it purported to be,—a machine constructed and used to transport building materials about a building in course of construction; and the accident happened, not because of any improper construction of the hod hoister, but because of the negligence of the engineer in failing to obey the instructions of the plaintiff,—negligence for which the defendants are not liable. But the evidence does not show that these defendants "furnished" this hod hoister for the use of their employés. The hod hoister was constructed by the Star Building Company, and appears to have been used by the mechanics or subcontractors employed in the building. It does not appear that these defendants could have built such a machine in the building, or that it was their duty to furnish to their employés a machine to distribute the materials used by them upon the several floors. When they took this material to the building, and used the appliances there provided, —machines which were apparently safe for that use,—they simply used the methods and appliances there provided in the performance of their subcontract. There was nothing in the appearance of this machine at the time it was used to indicate that it was unsafe, or that the plaintiff, when he used it, ran any other or different risk than that which was apparent to any one using a machine of this kind; and, when they hired this machine,—the only one available for the purpose in use in the building,—upon no principle can they be said to have guarantied that it was provided with all the safeguards that had ever been applied to machines of this character. They, with other subcontractors, used what was provided in the building for their use,—used it as the other subcontractors did; and I can see no principle upon which they are liable because one of their men in using it was injured. As before stated, it was not a machine supplied by these defendants for their men to use. Over its construction or operation these defendants had no control, and they had no power to remedy any defects, if defects existed, in the machinery itself. The only defect that the plaintiff claims to have existed was the failure to place upon the cable a stop which would automatically stop the machine before reaching the roof, but the preponderance of evidence is that such a stop was not used in machines of this kind.

The plaintiff certainly did not depend upon the existence of such a stop when he used the machine, and he had the same opportunity of knowing whether there was such a stop as had McNulty or the defendants. The defendants were not negligent because of the failure of the corporation that erected this hod hoister to place a stop upon it, as they neither furnished the machine, nor guarantied its safety, and were not responsible for the fact that such a stop was not there. It seems, therefore, that there was no duty that the defendant neglected to perform, and that the court properly dismissed the complaint.

It follows that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON and McLAUGHLIN, JJ., concur.

HATCH, J. (dissenting). The defendant was charged with the duty of providing a safe place for the plaintiff to work, and also a safe implement with which to work; and the fact that the defendant hired a machine and servants of another master to work with did not change the obligation which rested upon him in this respect. The shaft with which the elevator was operated was not a safe place to work, for it was not provided with any precaution which would prevent an accident if the operator of the elevator was negligent. It appeared from the evidence that the defendant was familiar with the shaft and its construction, and that the plaintiff had no knowledge upon the subject. Had chocks been placed upon the grooves in which the elevator ran, the plaintiff would have been warned of the danger which he encountered, and might have protected himself therefrom; and the existence of such chocks would have also furnished the operator of the elevator with notice to stop the machine. All of these conditions were well known to the defendant, and of all of them the plaintiff was ignorant. Under such circumstances, whether the defendant should be chargeable with negligence in not seeing that such safeguards were provided became a question of fact for the jury to determine, and it was therefore error to dismiss the plaintiff's complaint. Such question should have been submitted to the jury, and upon the proof they would be authorized to find that the defendant was guilty of negligence, and therefore libale to respond in damages for the injury sustained by the plaintiff. This is the only question in the case, as there is no pretense that the defendant was guilty of any act which contributed to the injury; and, if he might have been so charged, the question was for the determination of the jury. I think that the judgment should be reversed.